[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-13134

Non-Argument Calendar

————————————————

STEVEN UNGER,

Plaintiff-Appellant,

*versus*

MAJORCA AT VIA VERDE HOMEOWNERS ASSOCIATION
INC.,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-81175-AHS

————————————————

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Steven Unger appeals from the district court's dismissal of his complaint against Majorca At Via Verde Homeowners Association, Inc. ("Majorca"). Unger asserted a claim against Majorca for failing to reasonably accommodate his disability in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f).[1] The district court dismissed Unger's complaint for failure to state a claim. After careful review, we reverse the district court's order.

## I.

This is an appeal from an order dismissing Unger's complaint under Federal Rule of Civil Procedure 12(b)(6). We therefore accept the complaint's factual allegations "as true and constru[e] them in the light most favorable to" Unger. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

---

[1] This provision of the FHA is sometime referred to as the "Fair Housing Amendments Act of 1988" to reflect the amendment to the FHA that included a provision concerning discrimination against handicap-persons. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 (11th Cir. 2008) ("The FHAA amended 42 U.S.C. § 3604, the primary substantive provision of the FHA, by adding a new subsection (f) that applies only to discrimination against the handicapped.").

Unger and his wife live at Majorca At Via Verde. Because Unger is disabled—he suffers from severe ankylosing spondylitis—he cannot attend Majorca's homeowners' association meetings.

Before April 2019, the minutes from the homeowners' association meetings "were promptly posted online . . . immediately after the meeting was held." Beginning in April 2019, however, the minutes were no longer promptly published on Majorca's website. Without access to the meeting minutes, Unger could not access Majorca At Via Verde's "community happenings."

Unger and his wife reached out to members of Majorca's board, and to Majorca's property management company, to obtain access to the meeting minutes. When they did not receive access, Unger's wife informed Majorca's property manager that Unger's disability prevented him from attending homeowners' association meetings and requested an accommodation on his behalf. Unger's wife requested that Majorca accommodate Unger by either recording the board meetings or providing "a transcript of the monthly board meetings minutes . . . immediately after the meetings occur."

In response to Unger's request, Majorca's property manager stated that "the board of directors does not record" their meetings and that "[t]he only transcripts which are available are the approved meeting minutes from the previous meeting," meaning the transcripts would not be made available until a month after the relevant meeting. But the property manager stated that Unger could designate "a set representative by power of attorney" to attend the

meetings in his place and that the representative "may record or take notes as necessary" at the meetings.

Unsatisfied with this response, Unger retained counsel who repeated Unger's requested accommodations and informed Majorca that they had to accommodate Unger's disability. Majorca responded that "[t]here is no 'immediate' transcribing of the minutes"—because the minutes must be approved by the board before publication—and that the board "does not tape or video record any association meetings." Majorca also noted that it "has provided and continues to provide reasonable accommodations" to Unger. Majorca stated that, because of COVID-19, association meetings were now being held by Zoom (a remote video conference platform) and that Unger could attend the meetings remotely via Zoom. And Majorca stated that Unger may designate a third-party to attend and record the meetings on his behalf when meetings are held in person.

Unger filed a complaint against Majorca and alleged that Majorca violated the FHA by failing to grant his reasonable accommodation requests. Unger alleged that Majorca failed to accommodate his disability "by providing him minutes or recordings of meetings . . . either immediately after the meetings, or at all."

Majorca moved to dismiss Unger's complaint for failure to state a claim. Among other arguments, Majorca asserted that Unger was not entitled to the specific accommodations he requested and that Majorca offered Unger two reasonable alternative accommodations: (1) the ability to attend association meetings via Zoom;

and (2) the ability to designate a third-party to attend and record association meetings on Unger's behalf.

The district court granted Majorca's motion to dismiss without prejudice. The district court found that Unger sufficiently alleged that he was disabled, that he requested an accommodation, and that an accommodation was necessary because of his disability. But the district court did not address whether the accommodations Unger requested were reasonable. Instead, the district court noted that Unger is not entitled to the accommodations he requested and found that Majorca did not refuse to reasonably accommodate Unger. In so doing, the district court relied on the alternative accommodations Majorca offered to Unger.

Unger moved to amend his complaint. In his proposed amended complaint, Unger alleged that the alternative accommodations Majorca proposed were not reasonable and that the accommodations he requested do not impose an undue burden on Majorca.

The district court denied Unger's motion for leave to amend and determined that Unger's proposed amended complaint conceded that Majorca "did not refuse the request" to accommodate Unger and that Majorca "proffered several reasonable accommodations." Accordingly, the district court found that the proposed amended complaint "suffer[ed] from the same deficiency as

6                    Opinion of the Court                    21-13134

the original [c]omplaint" and directed the clerk to close Unger's case.  This appeal followed.[2]

## II.

"We review the district court's grant of a motion to dismiss for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  *Hunt*, 814 F.3d at 1221.

## III.

The FHA prohibits discriminating "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."  42 U.S.C. § 3604(f)(2).  Under the FHA, discrimination "on the basis of a 'handicap,' or a disability," includes "refusing to make reasonable accommodations when necessary to afford the person equal opportunity to use and enjoy a dwelling."  *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) (footnote omitted).

---

[2] Unger appealed both the order dismissing his original complaint and the order denying his motion for leave to file an amended complaint.  Because we find that the district court erred in dismissing Unger's original complaint, and the district court denied Unger's motion to amend because the proposed amended complaint "suffer[ed] from the same deficiency as the original [c]omplaint," we do not separately address the district court's order denying Unger's motion for leave to amend.

To state a claim for failure to accommodate under the FHA, a plaintiff must plead:

> (1) the plaintiff is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) the plaintiff requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the plaintiff an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the [requested] accommodation.

*Hunt*, 814 F.3d at 1225. "At the pleading stage, the relevant question is whether the complaint provides 'a short and plain statement of the claim' that 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 1221 (alteration in original) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)). And the complaint must "present[] a plausible set of facts from which we can infer that" Unger has "sufficiently pled [his] claim." *Id.* at 1225.

Here, the district court dismissed Unger's complaint, and then denied his motion to amend, because the court found that Unger failed to plausibly allege the fourth element of his failure-to-accommodate claim, i.e., that Majorca refused to accommodate Unger. Unger argues that the district court erred because the district court should have determined whether the accommodations Unger requested, which Majorca refused to provide, were reasonable and should not have relied on the alternative accommodations Majorca proposed in dismissing his claim.

This appeal asks us to determine whether the district court properly relied on the alternative accommodations Majorca offered to Unger, before considering the reasonableness of the accommodations Unger requested.  Our analysis is divided into two parts.  First, we discuss this Court's framework for failure-to-accommodate claims under the FHA.  Then, we discuss whether the district court correctly applied that framework.

## A.  Framework for Failure-to-Accommodate Claims

In *Schaw v. Habitat for Humanity of Citrus County, Inc.*, 938 F.3d 1259 (11th Cir. 2019), this Court addressed the framework for failure-to-accommodate claims under the FHA and reversed a district court's decision that a defendant "was entitled to summary judgment because it had provided a sufficient '*alternative* accommodation.'" *Id.* at 1269 (emphasis in original).  While we acknowledged that a plaintiff is not entitled to his requested accommodation, we concluded that so long as the plaintiff's request "is facially reasonable, the burden shifts to the defendant, who must prove that the accommodation would nonetheless impose an 'undue burden' or result in a 'fundamental alteration' of its program." *Id.* at 1266 (quoting *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1220 (11th Cir. 2008)).  We concluded that the district court erred in its "alternative accommodation" finding because the district court should have "consider[ed] first whether the plaintiff's own requested accommodation 'seems reasonable on its face' before turning     to     consider     a     defendant's     objections     and

counterproposals." *Id.* at 1269 (quoting *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002)).

Majorca argues that the *Schaw* framework does not apply here because *Schaw* was decided at a different procedural stage—an order granting summary judgment. We disagree. At the motion to dismiss stage, the plaintiff also bears the initial burden of showing that the plaintiff's requested accommodation is reasonable on its face. *Cf. id.* at 1265–66 ("A plaintiff carries the initial burden of showing that his proposed accommodation is [facially] reasonable."). Indeed, "[t]o withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face,'" and a request for a reasonable accommodation is an element of Unger's FHA claim. *Hunt*, 814 at 1221, 1225 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But arguments that a plaintiff's requested accommodation "impose[s] an 'undue burden' or result[s] in a 'fundamental alteration' of its program," *Schaw*, 938 F.3d at 1266, are affirmative defenses for which a defendant bears the burden of proof at both the motion to dismiss and the summary judgment stages of litigation, *see Willis v. Conopco, Inc.*, 108 F.3d 282, 286 (11th Cir. 1997) (describing "undue hardship" as "an affirmative defense to be pled and proven by an [American with Disabilities Act] defendant"); *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1330 (M.D. Fla. 2011) (explaining that, at the motion to dismiss stage, a defendant must establish its

"fundamental alteration defense" based "on the face of [the] [p]laintiff's [c]omplaint").[3]

Therefore, *Schaw*'s general framework for failure-to-accommodate claims under the FHA also applies at the motion to dismiss stage.[4]  Accordingly, at the motion to dismiss stage, courts "must consider first whether the plaintiff's own requested accommodation 'seems reasonable on its face' before turning to consider a defendant's objections and counterproposals." *Schaw*, 938 F.3d at 1269 (quoting *Barnett*, 535 U.S. at 401).

## B.  Whether the District Court Applied the *Schaw*-Framework

Turning to Unger's complaint, Unger alleged that he requested Majorca either to record the association's meetings or to provide him with a transcript of the meeting minutes immediately

---

[3] While these cases involved the American with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), "we look to case law under the RA and the ADA for guidance on what is reasonable under the FHA." *Schwarz*, 544 F.3d at 1220.

[4] We recognize that not every aspect of *Schaw* applies here because of the procedural posture of this case.  For example, in *Schaw*, the district court was able to consider "outside evidence" in connection with the defendant's objections and counterproposals.  938 F.3d at 1269.  But at the motion to dismiss stage, a court's consideration of a defendant's objections and counterproposals is limited to "the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (explaining that, at the motion to dismiss stage, "[t]he scope of review must be limited to the four corners of the complaint"); *see, e.g.*, *Haddad*, 784 F. Supp. 2d at 1330 (denying defendants' motion to dismiss because "[d]efendants' fundamental alteration defense [was] not established . . . on the face of" the complaint).

21-13134          Opinion of the Court          11

after the meetings.  Unger further alleged that, in response to his requests, Majorca stated that it would neither record its meetings nor provide Unger with a transcript of the meeting minutes immediately after the meetings.  Therefore, Unger plausibly alleged that Majorca refused to provide either of his requested accommodations.

The district court's contrary conclusion—that Unger failed to allege that Majorca refused to accommodate him—was premised on the alternative accommodations Majorca offered to Unger.  But the district court did not assess whether the accommodations Unger requested were facially reasonable before turning to Majorca's counterproposals.  In so doing, we conclude that the district court erred.

In accordance with *Schaw*, the district court should have first considered whether Unger's "requested accommodation[s] 'seem[ed] reasonable on [their] face' before turning to consider" Majorca's "objections and counterproposals."  938 F.3d at 1269 (quoting *Barnett*, 535 U.S. at 401).  Because the district court failed to follow this framework, remand is appropriate to allow the district court to do so in the first instance.  *See Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1308 (11th Cir. 2022).

## IV.

For the reasons stated, we reverse the district court's order dismissing Unger's claim and remand for further proceedings consistent with this opinion.

12                        Opinion of the Court                        21-13134

**REVERSED AND REMANDED.**